**RECEIVED**

DEC 27 2018

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA :

         V.               :     CRIMINAL NO. 18 MJ 308 (PJS/SER)

SEYED SAJJAD SHAHIDIAN     :

## AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION OF SEYED SAJJAD SHAHIDIAN

I, Timothy Rank, being duly sworn, state that:

1.    I am a citizen of the United States of America and a resident of the State of Minnesota.

2.    I graduated from the University of Minnesota Law School in 1993.   From August 2004 to the present, I have been employed by the United States Department of Justice as an Assistant United States Attorney for the District of Minnesota.   My duties are to prosecute persons charged with criminal violations of the laws of the United States.   During my practice as an Assistant United States Attorney, I have become knowledgeable about the criminal laws and procedures of the United States.

3.    In the course of my duties, I have become familiar with the charges and evidence in the case of <u>United States v. Seyed Sajjad Shahidian</u>, Criminal No. 18-CR-308 (PJS/SER).

4.    These charges follow an investigation by the United States Federal Bureau of Investigation ("FBI") that revealed that, from at least in or about February 2009 up to and including the present, Seyed Sajjad Shahidian ("Shahidian"), a citizen of Iran, engaged in a conspiracy to defraud the United States, including businesses in the United States, by causing U.S.-based



businesses to export U.S.-origin goods to Shahidian while concealing that he intended to ship those goods to Iran.

## Background on the International Emergency Economic Powers Act

5.      The International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706, authorizes the President of the United States to impose economic restrictions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.  Beginning in November 1979, pursuant to the authority granted under IEEPA, successive Presidents have issued Executive Orders finding that Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and, based on that finding, declaring a national emergency to deal with the threat.  Beginning in May 1995, pursuant to the authority granted under IEEPA, successive Presidents have issued Executive Orders to impose comprehensive trade and financial sanctions on Iran.

## The Sanctions Regime Against Iran

6.      The Iranian Transactions and Sanctions Regulations (ITSR), 31 C.F.R. Part 560, have been implemented pursuant to the authority granted under IEEPA and the Executive Orders. The ITSR generally prohibits any person from exporting or causing to be exported from the United States any goods, technology or service without having first obtained an export license from Unites States Department of the Treasury.    The ITSR imposes, among others, the following prohibitions:

a.      Section 560.204 provides that no goods, technology or services may be exported, re-exported, sold, or supplied to Iran, directly or indirectly from the United States or by a United States person, wherever located, without authorization.

b.     Section 560.203 prohibits any transaction by any United States person or within the United States that evades or avoids, or had the purpose of evading or avoiding, causes a violation of, or that attempts to violate, any of the prohibitions set forth in Part 560.

7.     IEEPA provides that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter [which includes ITSR]" and "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, [such] an unlawful act" shall be guilty of a crime.

## Summary of the Facts of the Case

8.     In February 2016, two U.S.-based payment processing companies, PayPal and Payoneer, reported to the FBI that they detected suspicious activity involving Shahidian and his business, Payment24. The FBI opened an investigation that centered on Shahidian's use of Payment24 to facilitate the unlawful procurement of U.S. infrastructure on behalf of Iranian criminal cyber actors.

9.     The resulting investigation has revealed that Shahidian co-founded and operated a business in Iran called Payment24.   According to Payment24's website, Shahidian was Payment24's CEO and an individual named Vahid Vali ("Vali") served as COO.   Payment24, among other things, sells to Iranian nationals a package of services that allows them to circumvent international sanctions on financial transactions with U.S.-based businesses.   This package of services includes access to U.S. financial and commercial markets using U.S.-based payment processing companies like PayPal and Payoneer.

3

10.     Shahidian and Vali obtained this sanction-evading access for their Payment24 customers by fraud, specifically, by providing these payment-processing companies with fraudulent identification and residency documents that made it appear that Payment24's customers reside in the United Arab Emirates ("UAE") rather than Iran.   Payment24 charged customers a fee (approximately $250 USD) for an advertised package that included a PayPal account, an "ID card and address receipt," one remote IP address from the UAE, and a Visa gift card for PayPal verification purposes.   Payment24's website also counseled its customers that "as long as the American sanctions continue to be in place, it is always advisable to create your accounts with a foreign identity."   To date, the FBI has located nearly 300 PayPal accounts used by Payment24 customers.    These PayPal accounts have processed millions of dollars of U.S. currency transactions.

11.     The FBI's investigation has revealed that when Shahidian established the PayPal and Payoneer accounts that permitted him and his customers to circumvent U.S. laws, he used the fraudulent tactics Payment24 provides.   For example, in January 2015, Shahidian provided to Payoneer fraudulent documents that falsely stated Shahidian lived in the UAE.    A court-authorized search of an email account used by Shahidian, star.soheil@yahoo.com, revealed that on January 9, 2015, Shahidian sent an email to Vali requesting a "passport edit" and the instruction "Do you see the upper portion of mehdi bostani's passport?   I want you to replace it with the portion used in SeyedHesam Shahidian's passport, meaning where the Soheil Shahidi's residency in the UAE is entered."   A scanned image of an Iranian passport belonging to SeyedHesam Shahidian was included in this email along with a scan of Mehdi Bostani's UAE passport.   A signature was included in the body of the e-mail that listed "Soheil Shahidi, C.E.O."   Two files

4

were attached to the e-mail, entitled "Hesam.jpg" and "Mehdi-pass.jpeg."   "Hesam.jpg" appeared to be a scanned passport from the Islamic Republic of Iran for Seyedhesam Shahidian, Passport No: L15193309, with a "Domicile" listed as Iran and the "Place of Issue" listed as The Passport-Police of Iran.   The file "mehdi-pass.jpeg" appeared to be a scanned passport from the Islamic Republic of Iran for Mehdi Bostani, Passport No: L95272425, with the "Country of Residence" listed as the United Arab Emirates and the "Place of Issue" listed as Abu Dhabi.

12.      On January 9, 2015, Shahidian received at his star.soheil@yahoo.com account an email bearing the subject "Re: Passport edit."    The body of the e-mail did not contain any text. There was one attachment to the e-mail named "SCAN.jpg."   The attached file appeared to be the same scanned passport for Seyedhesam Shahidian, Passport No: L15193309.   However, the top portion of the passport listed "Country of Residence: United Arab Emirates" and "Place of Issue" as "Abu Dhabi."   The FBI believes the top portion of this scanned passport was altered electronically to change the Country of Residence from Iran to United Arab Emirates and the Place of Issue The Passport-Police of Iran to Abu Dhabi from, as depicted in the side-by-side comparison of the two images of passports below:



13.     The court-authorized search of the star.soheil@yahoo.com email account also revealed numerous documents, files, and photographs – including photographs of Shahidian that establish his use of this email account and his prominent role in the scheme.

14.     Using fraudulently obtained PayPal accounts, Shahidian engaged in, and conspired to engage in, the smuggling of goods from the United States into Iran and the intentional violation of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.   Shahidian personally used the fraudulently obtained payment processing accounts to purchase goods from numerous U.S.-based business, including a substantial amount of computer servers and other computer equipment that he caused to be smuggled from the United States to

6

Iran. · Emails and other records show that Shahidian committed these violations by directing the U.S.-based businesses to ship the goods to an address in the UAE.   He provided various U.S.-based businesses with false documents of his residency and citizenship, in an effort to conceal that he was attempting to procure U.S.-origin computer goods for end-use in Iran.

15.     Shahidian later marketed these goods for sale in Iran using a catalog entitled "Network and Server Equipment."   An email received by Shahidian on July 12, 2016, contained a digital version of this catalog that bears the logo of another Shahidian-controlled business entity named "Star Soheil Company."   The catalog states that the "Star Soheil Company" has nine months of experience in importing servers and network equipment for companies, organizations and datacenters in Iran.   The catalog further states that the "Star Soheil Company" has imported a number of Dell servers from the United States that it was offering for sale in Iran.   The Dell servers ("Dell Poweredge C1100") described in the catalog are the same model Dell servers that Shahidian purchased from a United States company based in Fremont, California.   Records obtained from that Fremont, California-based company show that on or about June 9, 2016, "Soheil Shahidi" made purchases of these Dell computer servers and other equipment totaling approximately $89,981.64 USD.   The invoices were paid for via PayPal, including PayPal accounts associated with star.soheil@yahoo.com and a second email account associated with Shahidian, star.soheil@gmail.com.   The records also show the servers were shipped to the UAE.

16.     Shahidian advertised on the Payment24 website that he, through Payment24, has successfully introduced millions of U.S. dollars into the economy of Iran.   Financial records obtained during the course of the investigation corroborate Shahidian's claim.   Records from PayPal demonstrate that one of the PayPal accounts used by Shahidian received more than

$6,000,000 in U.S. dollars.   A second PayPal account used by Shahidian received more than $1,800,000 in U.S. dollars.   This second account was used by Shahidian to purchase computer software through Digital River, a Minnesota-based payment processing company.   In total, Shahidian made 21 purchases through Digital River – using different PayPal accounts – between June 16, 2014, and January 23, 2018.

17.     In the course of the investigation, the FBI discovered a copy of an Iranian television newsmagazine program that featured a lengthy interview of Shahidian in which he discussed Payment24 and related topics. During that interview, Shahidian made several statements about his business that support the charges brought by the United States, including the following:

a.     Regarding the purchase of computer servers from the United States, shipment of those computers the UAE, and the reshipment of those servers to Iran for subsequent sale:

> Shahidian:  I purchased three servers in America.  Three new servers.  I lacked the necessary experiences, so I ended up purchasing the servers from a site that had the most expensive prices and the three servers cost about twenty thousand dollars. I utilized the servers which had been housed in a data center in America for one year.  That project failed and the servers remained stuck there.  I was forced to relocate those servers to Iran.  I researched how I could do it.  Long story short, I managed somehow to transfer the servers to the UAE, then from the UAE to Iran, at the highest possible cost.  I perhaps paid five millions to bring those servers from America to Iran.  But it turned out to be a valuable experience for the next time when a friend stated they needed a server and asked if I could bring it for them.  I said I could because I had done it before. It was one of my Payment24 clients.  I bought a server for this poor individual, bought it, and thought it was interesting when I saw the profit.  After that I imported about seventy servers and I think in less than four months I sold the seventy servers.

b.      Regarding facilitating the evasion of sanctions by Iranian citizens using

Payment 24:

Shahidian:   I have helped people from different walks of life, all those who
had the potential to do business with those abroad, earn income in foreign
currencies, and transfer their earnings, so to speak, into the country.

Question from interviewer:   Can we make purchases from Amazon and
eBay through Payment 24?

Shahidian:   Yes

Interviewer:   Can it be done easily?

Shahidian:   Well, if the shipping address for the goods is in Iran, then no.
There are individuals who have acquaintances, friends or relatives abroad
that we complete purchases for and ship the items to addresses provided
outside of the country. Then from there, it gets mailed by their
acquaintances.

c.      Regarding the volume of business conducted by Payment24:

Shahidian:   One more thing here I'd like to emphasize is the magnitude of
our dollar funds available. I don't think there is anyone in Iran who has two
or three hundred thousand dollars readily available in case someone wanted
to make a quick payment in such amounts.

## PROCEDURAL HISTORY OF THE CASE

### The Charging Process

18.      Under the federal law of the United States, a criminal prosecution is commenced

when a grand jury files an indictment.   Institutionally, a grand jury, though an arm of the court,

is an independent body composed of private citizens -- not less than 16 and not more than 23

people -- whom the United States District Court selects at random from the residents of the judicial

district in which the court resides.   The purpose of the grand jury is to review the evidence of

crimes presented to it by United States law enforcement authorities.   After independently

reviewing this evidence, each member of the grand jury must determine whether there is probable cause to believe that a crime has been committed and that a particular person committed that crime. If at least 12 jurors find that the evidence they have reviewed provides probable cause to believe that a particular person committed the crime, the grand jury may return an indictment.   An indictment is a formal written accusation that charges the particular person, now a defendant, with a crime, identifies the specific laws that the defendant is accused of violating, and specifies the date and place where the charged crime occurred.

19.     The grand jury initiates the criminal prosecution when it files the indictment with the United States District Court.   Thereafter, the clerk of the court, at the direction of a United States District Judge or Magistrate Judge, normally issues a warrant for the defendant's arrest.

20.     On December 18, 2018, a grand jury sitting in the District of Minnesota returned an indictment, Criminal Case No. 18-CR-308 (PJS/SER), charging Shahidian with criminal offenses against the laws of the United States and filed this indictment with the United States District Court for the District of Minnesota.   It is the practice of the United States District Court for the District of District to retain the original indictment and file it with the records of the court. Therefore, I have obtained a copy of the indictment from the clerk of the court and have attached it to this affidavit as **Exhibit A**.

21.     On December 20, 2018, based on the indictment issued by the grand jury, Judge Patrick J. Schiltz of the United States District Court for the District of Minnesota issued a warrant for Shahidian's arrest.   It is the practice of the United States District Court for the District of Minnesota to retain the original arrest warrant and file it with the records of the court.   Therefore,

I have obtained a copy of the arrest warrant from the clerk of the court and have attached it to this affidavit as **Exhibit B**.

## The Charges and Pertinent United States Law

22.     The indictment charges in six counts that Seyed Sajjad Shahidian, and others, committed the following offenses:

| | |
|---|---|
| Count 1: | Conspiracy to Defraud and Commit Offenses Against the United States (unlawfully export U.S.-origin goods to Iran), in violation of Title 18, United States Code, Section 371 and Title 50 United States Code, Section 1705(c), carrying a maximum penalty of five years' imprisonment. |
| Counts 2 and 3: | Wire Fraud, in violation of Title 18, United States Code, Sections 1343 and 2, punishable by a maximum prison term of twenty years; |
| Count 4: | Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349, punishable by a maximum prison term of twenty years; |
| Count 5: | Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) 1956(h), punishable by a maximum prison term of twenty years; and |
| Count 6: | Aggravated Identity Theft, in violation of Title 18, United States Code, Sections 1028A and 2, punishable by a mandatory prison term of two years. |

23.     The United States requests the extradition of Shahidian for all of these offenses. Each count charges a separate offense.   Each offense is punishable under a statute that (1) was the duly enacted law of the United States at the time the offense was committed, (2) was the duly enacted law of the United States at the time the indictment was filed, and (3) is currently in effect. Each offense is a felony offense punishable under United States law by more than one year of imprisonment.   I have attached copies of the pertinent sections of these statutes and the applicable penalty provisions to this affidavit as **Exhibit C**.

<u>Count 1</u>

24.     Count 1 charges Shahidian with conspiracy to commit a substantive offense against the United States, specifically, to unlawfully export controlled U.S.-origin goods and services from the United States to Iran, in violation of Title 18, United States Code, Section 371 and Title 50 United States Code, Section 1705(c).

25.     Under United States law, a conspiracy is an agreement to commit one or more criminal offenses.   The agreement on which the conspiracy is based need not be expressed in writing or in words, but may be simply a tacit understanding by two or more persons to do something illegal.   Conspirators enter into a partnership for a criminal purpose in which each member or participant becomes a partner or agent of every other member.   A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the identities of all the other members of the conspiracy.   If a person has an understanding of the unlawful nature of a plan and knowingly and willfully agrees to it, joining in the plan, he is guilty of conspiracy even though he did not participate before and may play only a minor part.   A conspirator can be held criminally responsible for all reasonably foreseeable actions undertaken by other conspirators in furtherance of the criminal partnership.   Moreover, because of this partnership, statements made by a conspirator in the course of and while he is a member of the criminal conspiracy are admissible in evidence not only against that conspirator, but also against all other members of the conspiracy.   This is so because, as stated earlier, a conspirator acts as an agent or representative of the other conspirators when he is acting in furtherance of their illegal

scheme.   Therefore, statements of conspirators made in furtherance of the conspiracy may be considered to be statements made by all conspirators.

26.   The crime of conspiracy is an independent offense, separate and distinct from the commission of any specific substantive crimes.   Consequently, a conspirator can be found guilty of the crime of conspiracy to commit an offense even where the substantive crime that was the purpose of the conspiracy is not committed.   The Congress of the United States has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the conspiracy is not successful, because collective criminal planning poses a greater threat to the public safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

27.   To satisfy its burden of proof and convict Shahidian on Count 1, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that two or more persons entered an agreement to commit the underlying offense, (i.e., to export items and services from the United States to Iran without a license or proper authorization from the United States Department of Treasury); (2) that Shahidian knowingly became a member of the conspiracy to commit the underlying offense; and (3) that at least one co-conspirator committed at least one overt act in furtherance of the conspiracy.   An overt act is any action taken to further the objective of the conspiracy, and need not itself be a criminal act.

28.   The government's evidence will establish that Shahidian and other conspirators solicited purchase orders for U.S.-origin goods from companies in the United States to Iran, through the UAE, knowing that such exports were unlawful.   This will be shown at trial by introducing as evidence the Payment24 website; emails sent to and from Shahidian and his co-

conspirators, including Vahid Vali; PayPal and Payoneer business records; invoices from the U.S. company based in Fremont, California, from which Shahidian purchased Dell computer servers; records obtained from the email accounts used by Shahidian, including the Star Soheil Company catalog; and Shahidian's own statements to Iranian media in which he admitted to aspects of the conduct for which he has been charged.

<u>Counts 2 and 3</u>

29.     Counts 2 and 3 charge Shahidian with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2.    To satisfy its burden of proof and convict Shahidian on Counts 2 and 3, the government, at trial, must establish beyond a reasonable doubt that: (1) the defendant knowingly participated in a scheme to defraud in order to obtain money or property, that is, by making a payment for the purchase of computer software using a PayPal account controlled by Shahidian to a U.S. payment processing company, Digital River; (2) that the scheme included a material misrepresentation or concealment of a material fact; (3) that the defendant had the intent to defraud; and (4) that the defendant used wire communications in furtherance of the scheme. This will be shown at trial by introducing as evidence the records documenting the purchases made by Shahidian using Digital River, the Minnesota-based payment processing business, emails sent to and from Shahidian, as well as business records, including shipping documents, invoices, and records from the various online payment services, including PayPal and Digital River.

<u>Count 4</u>

30.     Count 4 charges Shahidian with conspiracy to commit wire fraud, specifically, conspiring with others to obtain property by means of false or fraudulent pretenses, by knowingly

14

transmitting or causing to be transmitted, a wire communication, in violation of Title 18, United States Code, Section 1349.

31.     To satisfy its burden of proof and convict Shahidian on Count 4, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that two or more persons entered an agreement to commit the underlying offense, (i.e., to obtain property by means of false or fraudulent pretenses by transmitting or causing to be transmitted a wire communication); and (2) that Shahidian knowingly became a member of the conspiracy to commit the underlying offense.

32.     The government's evidence on Court 4 will establish that Shahidian and other conspirators solicited purchase orders for U.S.-origin goods from companies in the United States to Iran, by means of false and fraudulent pretenses by providing various U.S.-based businesses with false documents of citizenship and residency, in an effort to conceal that they were attempting to illegally procure U.S. origin goods for end-use in Iran.   This will be shown at trial by introducing as evidence emails sent to and from Shahidian, including emails sent to these U.S.-based businesses, in which Shahidian and the co-conspirators provided fraudulent passports, forged residency cards, and other identifying information to the unsuspecting companies.

Count 5

33.     Count 5 charges Shahidian with conspiracy to launder monetary instruments, in violation of Title 18, United States Code Section 1956(h).   To satisfy its burden of proof and convict Shahidian on Count 5, the government, at trial, must establish beyond a reasonable doubt that Shahidian did knowingly conspire with others to violate Title 18, United States Code, Section 1956(a)(1)(B)(i), that is, by conspiring and agreeing to conduct and attempt to conduct financial

transactions affecting interstate and foreign commerce, which transactions involved proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and smuggling, in violation of Title 18, United States Code, Section 554, and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).   This will be shown at trial by introducing evidence that Shahidian, using PayPal, sent money from outside the United States to the bank accounts of U.S. companies inside the United States, as payment for the purchase of U.S.-origin goods.   In addition, money laundering conspiracy will be shown by the evidence of Shahidian's unlawful use of PayPal accounts acquired through false and fraudulent misrepresentations to conduct financial transaction that concealed Shahidian's Iranian identity and location.

Count 6

34.     Count 6 charges Shahidian with aggravated identity theft, in violation of Title 18, United States Code, Section 1028(A)(a)(1). To satisfy its burden of proof and convict Shahidian on Count 6, the government, at trial, must establish beyond a reasonable doubt that the defendant (1) knowingly transferred a means of identification of another person without lawful authority; (2) that Shahidian knew the means of identification belonged to another person; and (3) that the transfer was during and in relation to another crime.   This will be shown at trial by introducing as evidence emails sent to and from Shahidian, as well as business records, including shipping documents, invoices, and records from the various online payment services.

Fugitive's Location

35.   On November 11, 2018, Shahidian was arrested by the United Kingdom's Metropolitan Police Extradition Team, pursuant to a request for his provisional arrest submitted by the United States.   At the time of his arrest, Shahidian was using his true name and possessed the following identification documents: Commonwealth of Dominica Passport Number R0140026.

36.   Shahidian is being held by United Kingdom authorities at Her Majesty's Prison (HMP) Wandsworth pending the extradition proceedings.

Description of Fugitive

37.   Shahidian is a citizen of Iran, born on April 1, 1987.   He is described as being tall and thin, with brown eyes and black hair.

38.   I have attached a photograph of Shahidian to this affidavit as **Exhibit D**.   This photograph was recovered from the search of the star.soheil@yahoo.com email account.

**Conclusion**

39.   I have attached the following documents in support of this request for the extradition of Seyed Sajjad Shahidian.

A.   **Exhibit A** is a copy of the indictment.

B.   **Exhibit B** is a copy of the arrest warrant.

C.   **Exhibit C** is a copy of the pertinent sections of the following statutes and their penalties:

> Title 18, United States Code, Section 371;
> Title 18, United States Code, Section 2;
> Title 50, United States Code, Section 1705;
> Title 31, Code of Federal Regulations, Section 560;
> Title 18, United States Code, Section 1349;
> Title 18, United States Code, Section 1343;

Title 18, United States Code, Section 1028A;
Title 18, United States Code, Section 554; and
Title 18, United States Code, Section 1956.

D.     **Exhibit D** is a photograph of Seyed Sajjad Shahidian.

40.     I have thoroughly reviewed the government's evidence against Shahidian and attest
that this evidence indicates that Shahidian is guilty of the offenses charged in the indictment.

Executed this **27th** day of December, 2018, at Minneapolis, Minnesota, United
States of America.

Erica H. MacDonald
United States Attorney

Timothy Rank
Assistant United States Attorney

Signed and sworn to before me this **27th** day of **Dec.**, 2018, at Minneapolis,
Minnesota.

Honorable David T. Schultz
United States Magistrate Judge

18

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| | ) | |
| Plaintiff, | ) | (18 U.S.C. § 371) |
| | ) | (18 U.S.C. § 1343) |
| v. | ) | (18 U.S.C. § 1349) |
| | ) | (18 U.S.C. § 1028A) |
| 1.  SEYED SAJJAD SHAHIDIAN, | ) | (18 U.S.C. § 1956(h)) |
|     aka "Soheil Shahidi," | ) | (18 U.S.C. § 2) |
| | ) | (50 U.S.C. § 1705(c)) |
| 2.  VAHID VALI, and | ) | |
| | ) | |
| 3.  PAYMENT24, | ) | |
| | ) | |
| Defendants. | ) | |

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to this Indictment:

**<u>INTRODUCTORY ALLEGATIONS</u>**

**A.   Defendants**

1.      Defendant SEYED SAJJAD SHAHIDIAN is an Iranian national residing in
Iran who is the founder of PAYMENT24 and is PAYMENT24's Chief Executive Officer.
Defendant VAHID VALI is PAYMENT24's Chief Operating Officer and is also an
Iranian national residing in Iran.  Defendant PAYMENT24 is an internet-based financial
services company located in Iran.  The primary business of PAYMENT24 is assisting
Iranian citizens residing in Iran with conducting financial transactions with businesses
based in the United States that are prohibited by international sanctions.  These
transactions include the unlawful purchase and importation into Iran of computer servers

SCANNED
DEC 1 8 2018
U.S. DISTRICT COURT MPLS

CASE 0:18-cr-00308-PJS-SER *SEALED*   Document 7   Filed 12/18/18   Page 2 of 14

U.S. v. Seyed Sajjad Shahidian, et al.

and software from United States-based businesses, among others.  In order to facilitate these transactions, PAYMENT24 obtains payment processing accounts from United States-based businesses using fraudulent passports and other false residency documentation.   PAYMENT24 charges a fee for its services, which, according to PAYMENT24's website, are used to circumvent "American sanctions."  PAYMENT24 has more than 40 employees and has offices in Tehran, Shiraz, and Isfahan, Iran. PAYMENT24 claims on its website that it has brought millions of dollars of foreign currency into Iran.

**B.      Relevant Legal Provisions**

2.      The International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706, authorizes the President of the United States to impose economic restrictions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.  Beginning in November 1979, pursuant to the authority granted under IEEPA, successive Presidents have issued executive orders finding that Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and, based on that finding, declaring a national emergency to deal with the threat. Beginning in May 1995, pursuant to the authority granted under IEEPA, successive Presidents have issued executive orders to impose comprehensive trade and financial sanctions on Iran.  The Iranian Transactions

<u>U.S. v. Seyed Sajjad Shahidian, et al.</u>

and Sanctions Regulations (ITSR), 31 C.F.R. Part 560, have been implemented pursuant to the authority granted under IEEPA and the executive orders.

3.     The ITSR generally prohibits any person from exporting or causing to be exported from the United States any goods, technology or service without having first obtained an export license from Unites States Department of the Treasury.  The ITSR, or its predecessor the Iranian Transactions Regulations, were in effect at all times relevant to this Indictment, and imposes, among others, the following prohibitions:

     a.     Section 560.204 provides that no goods, technology or services may be exported, re-exported, sold, or supplied to Iran, directly or indirectly from the United States or by a United States person, wherever located, without authorization.

     b.     Section 560.203 prohibits any transaction by any United States person or within the United States that evades or avoids, or had the purpose of evading or avoiding, causes a violation of, or that attempts to violate, any of the prohibitions set forth in Part 560.

4.     IEEPA provides that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter [which includes ITSR]" and "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, [such] an unlawful act" shall be guilty of a crime.

3

CASE 0:18-cr-00308-PJS-SER *SEALED*   Document 7   Filed 12/18/18   Page 4 of 14

<u>U.S. v. Seyed Sajjad Shahidian, et al.</u>

5.      The Grand Jury incorporates by reference and realleges these Introductory

Allegations into each and every count of this Indictment as though fully alleged therein.

### <u>COUNT 1</u>
(Conspiracy to Defraud and Commit Offenses against the United States)

6.      Beginning in or before 2009 and continuing to in or about November 2018,

in the State and District of Minnesota, and elsewhere, the defendants,

**SEYED SAJJAD SHAHIDIAN, aka "Soheil Shahidi,"
VAHID VALI, and
PAYMENT24,**

and others known and unknown to the Grand Jury, conspired and agreed with each other

to knowingly and intentionally commit offenses against the United States, specifically to

willfully export, attempt to export, and cause to be exported goods, technology and

services from the United States to Iran and to enter into transactions within the United

States that evaded and avoided, and had the purpose of evading and avoiding, the

prohibitions imposed on Iran by the United States government, in violation of 50 U.S.C.

§ 1705(c), 15 C.F.R. § 746.7, 15 § C.F.R. 764.2, 31 C.F.R. § 560.203 and 31 C.F.R. §

560.204.

**Manner and Means**

7.      The manner and means by which the object of the conspiracy was

accomplished included, but was not limited to, the following:

            a.      Defendants SHAHIDIAN, VALI, and others, using PAYMENT24,

conspired to cause U.S. businesses to engage in financial transactions prohibited

4

U.S. v. Seyed Sajjad Shahidian, et al.

by IEEPA and the ITSR.  On its website, PAYMENT24 sells a package of services to assist its Iranian clients with circumventing sanctions restrictions, which enables those clients to make online purchases of goods from United States-based businesses.  PAYMENT24 charges approximately $245.00 U.S. dollars for the package, which includes a PayPal account, a fraudulent "ID card and address receipt," a remote IP address from the United Arab Emirates, and a Visa gift card for PayPal verification purposes.  The PAYMENT24 website states that "as long as the American sanctions continue to be in place, it is always advisable to create your accounts with a foreign identity."  The PAYMENT24 website provides instructions to PAYMENT24 clients about how to avoid restrictions on foreign websites, including advising that they should not use any "Iranian identity and mailing address to register on any foreign websites," and "never attempt to log into those sites with an Iranian IP address."

        b.      Defendants SHAHIDIAN, VALI, and others, using PAYMENT24, conspired to deceive United States-based businesses to export United States-origin goods while concealing from the United States-based businesses that they intended to ship those United States-origin goods to Iran for their use in Iran. SHAHIDIAN, VALI, and others accomplished this fraud in part by making material misrepresentations and omissions regarding the destination of the United States-origin goods, falsely representing to the United States-based businesses that the goods were destined for the United Arab Emirates, when in fact they were

U.S. v. Seyed Sajjad Shahidian, et al.

destined for use in Iran.  In furtherance of this scheme to defraud, SHAHIDIAN, VALI, and others acting at their direction, provided the United States-based businesses with false documents of residency.  Also in furtherance of his scheme to defraud, and in order to accomplish the transactions with the United States-based businesses, SHAHIDIAN obtained payment processing accounts from United States-based companies using false residency information, fraudulent passport documents, and other residency documentation, including documents fabricated using the identity and personally identifiable information of another person.

### Overt Acts

8.      On or about the dates listed below, in furtherance of the conspiracy and to accomplish the objects of the conspiracy, SHAHIDIAN, VALI, PAYMENT24, and others committed, or caused to be committed, various overt acts within the District of Minnesota and elsewhere, including but not limited to the following:

a.      On April 11, 2011, SHAHIDIAN opened an account with PayPal, a United States-based payment processing company located in San Jose, California, with an account number ending in -5089.  In order to open this account, SHAHIDIAN provided false and fraudulent information to PayPal to conceal the fact that he was an Iranian citizen residing in Iran.  Specifically, SHAHIDIAN falsely certified to PayPal that he resided at a specific address in Dubai, United Arab Emirates, when in fact he resided in Iran.  During the course of the

<u>U.S. v. Seyed Sajjad Shahidian, et al.</u>

conspiracy, SHAHIDIAN used, or caused to be used, PayPal account -5089 to transmit more than $1,968,000 and receive more than $1,800,000 in U.S. currency.

      b.    On at least seventeen separate occasions, SHAHIDIAN used PayPal account -5089 to send payments to an e-commerce company headquartered in Minnetonka, Minnesota, to unlawfully purchase digital downloads of computer software and software licenses, and for other computer related products. Records of these transactions reflect the purchaser as "SeyedSajjad Shahidian" with the same fictitious address in the United Arab Emirates used by SHAHIDIAN to open PayPal account -5089.   These seventeen transactions occurred on or about the following dates: June 16, 2014, July 15, 2015, September 14, 2015, September 15, 2015, December 31, 2015, February 16, 2016, February 18, 2016, April 15, 2016, June 1, 2016, October 25, 2016, March 2, 2017, March 18, 2017, June 6, 2017, October 3, 2017, January 19, 2018, January 20, 2018 and January 23, 2018.

      c.    On November 17, 2010, SHAHIDIAN opened a PayPal account ending in -0324. In order to open this account, SHAHIDIAN provided false and fraudulent information to PayPal to conceal the fact that he was an Iranian citizen residing in Iran.   Specifically, SHAHIDIAN falsely certified to PayPal that he resided at a specific address in Dubai, United Arab Emirates, when in fact he resided in Iran.   During the course of the conspiracy, SHAHIDIAN used, or caused to be used, PayPal account -0324 to transmit more than $5,708,000 and receive more than $6,272,000 in U.S. currency.

7

<u>U.S. v. Seyed Sajjad Shahidian, et al.</u>

d.      On at least four separate occasions, SHAHIDIAN used PayPal account -0324 to send payments to the same e-commerce company headquartered in Minnetonka, Minnesota, to unlawfully purchase digital downloads of computer software and software licenses, and for other computer related products. Records of these transactions reflect the purchaser as "SeyedSajjad Shahidian" with the same fictitious address in the United Arab Emirates used by SHAHIDIAN to open PayPal account -0324. These four transactions occurred on or about the following dates: March 10, 2012, August 6, 2012, February 21, 2014, and August 3, 2017.

e.      During the course of the conspiracy, SHAHIDIAN opened, or caused to be opened, more than 250 PayPal accounts on behalf of customers of PAYMENT24 who resided in Iran. When opening these PayPal accounts for PAYMENT24 customers, SHAHIDIAN provided, or caused to be provided, false information to PayPal about the true residence and location of the PAYMENT24 customer. For example, in connection with nearly all of the accounts, SHAHIDIAN provided, or caused to be provided, a falsified utility bill purporting to be from the Dubai Electricity & Water Authority to PayPal in order to conceal the fact that the PAYMENT24 customer resided in Iran.

f.      On January 16, 2013, SHAHIDIAN opened an account with Payoneer, a United States-based payment processing company located in New York, with an account number ending in -8538 in the name of SHAHIDIAN's father. In order to open this account, SHAHIDIAN provided false and fraudulent

U.S. v. Seyed Sajjad Shahidian, et al.

information to Payoneer to conceal the fact that the account holder was residing in Iran. Specifically, SHAHIDIAN falsely certified to Payoneer that the account holder resided at a specific address in Dubai, United Arab Emirates, when in fact he resided in Iran. On December 29, 2014, Payoneer Customer Support sent an email to the account holder of -8538 requesting proof of residency. In response, SHAHIDIAN provided Payoneer with electronic copies of a falsified utility bill in the name of the account holder purportedly from the Dubai Electricity & Water Authority, a fraudulent passport in the name of the account holder altered to make it appear that the account holder resided in the United Arab Emirates, a falsified credit card statement altered to make it appear that the account holder resided in the United Arab Emirates, and a falsified Resident Identity Card from the United Arab Emirates in the account holder's name. The fraudulent utility bill, passport, credit card statement, and Resident Identity Card were created by VAHID VALI at SHAHIDIAN's direction and thereafter provided by VALI to SHAHIDIAN. Payoneer blocked the account ending in -8538 on January 1, 2015, based on suspicion that the account holder had provided falsified residency documentation.

g.      On December 16, 2013, SHAHIDIAN opened a Payoneer account with an account number ending in -1890. In order to open this account, SHAHIDIAN provided false and fraudulent information to Payoneer to conceal the fact that he was residing in Iran. Specifically, SHAHIDIAN falsely certified to Payoneer that he resided at the same address in Dubai, United Arab Emirates, that

<u>U.S. v. Seyed Sajjad Shahidian, et al.</u>

was used to open account -8538, when in fact he resided in Iran.   Payoneer blocked the account ending in -1890 on January 1, 2015.

        h.      On or about June 6, 2016, SHAHIDIAN purchased, or caused to be purchased, computer servers and networking infrastructure from a United States-based computer company based in Fremont, California, at a cost of $89,981.64. SHAHIDIAN paid for these purchases using fraudulently acquired PayPal accounts.   SHAHIDIAN concealed from the United States that computer servers and networking infrastructure were destined for use in Iran.

All in violation of 18 U.S.C. § 371.

<u>**COUNT 2**</u>
(Wire Fraud)

        9.      On or about June 1, 2016, in the State and District of Minnesota and elsewhere, the defendants,

**SEYED SAJJAD SHAHIDIAN, aka "Soheil Shahidi,"
VAHID VALI, and
PAYMENT24,**

and others known and unknown to the Grand Jury, having devised a scheme to defraud, and for the purpose of executing a scheme to defraud and to obtain property by means of false or fraudulent pretenses, as set forth above in paragraphs 6 through 8, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce an interstate wire communication; specifically, a payment for the purchase of computer software from a PayPal account controlled by the defendants to an

U.S. v. Seyed Sajjad Shahidian, et al.

e-commerce company located in Minnetonka, Minnesota, in violation of Title 18, United

States Code, Sections 2 and 1343.

## COUNT 3
(Wire Fraud)

    10.    On or about August 3, 2017, in the State and District of Minnesota and

elsewhere, the defendants,

**SEYED SAJJAD SHAHIDIAN, aka "Soheil Shahidi,"
VAHID VALI, and
PAYMENT24,**

and others known and unknown to the Grand Jury, having devised a scheme to defraud,

and for the purpose of executing a scheme to defraud and to obtain property by means of

false or fraudulent pretenses, as set forth above in paragraphs 6 through 8, knowingly

transmitted and caused to be transmitted by means of wire communications in interstate

and foreign commerce an interstate wire communication; specifically, a payment for the

purchase of computer software from a PayPal account controlled by the defendants to an

e-commerce company located in Minnetonka, Minnesota, in violation of Title 18, United

States Code, Sections 2 and 1343.

## COUNT 4
(Conspiracy to Commit Wire Fraud)

    11.    From in or about 2009 until in or about November 2018, in the State and

District of Minnesota and elsewhere, the defendants,

**SEYED SAJJAD SHAHIDIAN, aka "Soheil Shahidi,"
VAHID VALI, and
PAYMENT24,**

<u>U.S. v. Seyed Sajjad Shahidian, et al.</u>

conspired with each other and with and others known and unknown to the Grand Jury to commit the crime of wire fraud, in violation of Title 18, United States Code, Section 1349.

## COUNT 5
(Money Laundering Conspiracy)

12.    From in or about 2009 until in or about November 2018, in the State and District of Minnesota and elsewhere, the defendants,

**SEYED SAJJAD SHAHIDIAN, aka "Soheil Shahidi,"
VAHID VALI, and
PAYMENT24,**

and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, and agree to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and smuggling, in violation of Title 18, United States Code, Section 554, and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

U.S. v. Seyed Sajjad Shahidian, et al.

## COUNT 6
### (Aggravated Identity Theft)

13.     On or about January 11, 2015, in the State and District of Minnesota and

elsewhere, the defendants,

**SEYED SAJJAD SHAHIDIAN, aka "Soheil Shahidi,"**
**VAHID VALI, and**
**PAYMENT24,**

and others known and unknown to the Grand Jury, did knowingly transfer, possess, and

use, without lawful authority, a means of identification of another person during and in

relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud, in

violation of 18 U.S.C. § 1343, and conspiracy to commit wire fraud, in violation of 18

U.S.C. § 1349, knowing that the means of identification belonged to another actual

person, in violation of Title 18, United States Code, Sections 2 and 1028A(a)(l).

### FORFEITURE ALLEGATIONS

14.     Counts 1-6 of this Indictment are incorporated by reference for the purpose

of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and

982(a)(1), and Title 28, United States Code, Section 2461(c).

15.     If convicted of any of the offenses alleged in Counts 1-4 and 6 of this

Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United

States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any

property, real or personal, which constitutes or is derived from proceeds traceable to the

<u>U.S. v. Seyed Sajjad Shahidian, et al.</u>

violations of Title 18, United States Code, Sections 371, 1343 and 1349, and Title 50 United States Code, Section 1705(c).

16.   If convicted of the offense alleged in Count 5 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses and any property traceable to such property.

17.   If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                    FOREPERSON

# EXHIBIT B

CASE 0:18-cr-00308-PJS-SER *SEALED*   Document 14 *SEALED*   Filed 12/20/18   Page 1 of 1

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Minnesota

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.  CR 18-308(1) PJS/SER |
| Seyed Sajjad Shahidian | ) | |
| | ) | |
| | ) | |
| | ) | |

_____
*Defendant*

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Seyed Sajjad Shahidian                                                          ,

who is accused of an offense or violation based on the following document filed with the court:

✓ Indictment          Superseding Indictment          Information          Superseding Information          Complaint
  Probation Violation Petition          Supervised Release Violation Petition          Violation Notice          Order of the Court

This offense is briefly described as follows:
Count 1: Conspiracy to Defraud and Commit Offenses against the United States 18:371
Counts 2-3: Wire Fraud 18:2 and 1343
Count 4:  Conspiracy to Commit Wire Fraud 18:1349
Count 5:  Money Laundering Conspiracy 18:1956(h)
Count 6:  Aiding and Abetting Aggravated Identity Theft 18:2 and 1028A(a)(1)


Date:  _____12/20/2018_____

City and state:   St. Paul, MN                              

                                                _____
                                                *Issuing officer's signature*

                                                Cara Kreuziger, Deputy Clerk
                                                *Printed name and title*

| Return | |
|---|---|

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____ .

Date:  _____                  _____
                                                *Arresting officer's signature*

                                                _____
                                                *Printed name and title*

# EXHIBIT C

**Title 18, United States Code Section 371 – Conspiracy**

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be . . . imprisoned not more than five years, . . .

**Title 18, United States Code, Section 2 – Principals**

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

**Title 50, United States Code Section 1705–International Emergency Economic Powers Act (IEEPA)**

*Under the International Emergency Economic Powers Act (IEEPA), the President has the authority "to deal with any unusual and extraordinary threat...to the national security, foreign policy or economy of the United States." Title 50, United States Code Sections 1701-05. The President deals with such threats through Executive Orders, which have the force and effect of law. A violation of an Executive Order is an illegal act punishable under IEEPA, Title 50, United States Code Section 1705(b).*

(a) Unlawful acts

It shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter.

* * *

(c) Criminal penalty

A person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) shall, upon conviction, . . . be imprisoned for not more than 20 years, . . .

*Iranian Transaction and Sanctions Regulations (ITSR), Title 31, United States Code of Federal Regulations, Part 560. The ITSR generally prohibit any person from exporting or causing to be exported from the United States without a license any good or technology without having first obtained a validated export license from the U.S. Department of Treasury, Office of Foreign Assets Control (OFAC), which is located in Washington, D.C.*

*The Iranian Transactions and Sanctions Regulations impose, among others, the following prohibitions:*

**Title 31, Code of Federal Regulations Part 560.203 – Evasions; attempts**

Any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in this part is hereby prohibited.

**Title 31, Code of Federal Regulations Part 560.204 - Prohibited exportation, reexportation, sale or supply of goods, technology, or services to Iran.**

Except as otherwise authorized pursuant to this part, including § 560.511, and notwithstanding any contract entered into or any license or permit granted prior to May 7, 1995, the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited, including the exportation, reexportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that:

(a)     Such goods, technology, or services are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran or the Government of Iran;

or

(b)     Such goods, technology, or services are intended specifically for use in the production of, for commingling with, or for incorporation into goods, technology, or services to be directly or indirectly supplied, transshipped, or reexported exclusively or predominantly to Iran or the Government of Iran.

**Title 18, United States Code Section 1343 – Wire Fraud**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

**Title 18, United States Code Section 1349 – Conspiracy to Commit Wire Fraud**

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**Title 18, United States Code Section 1028A – Aggravated Identity Theft**

(a)(1)  Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of

identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

* * *

(c)(5)  any provision contained in chapter 63 (relating to mail, bank, and wire fraud).

## Title 18, United States Code Section 554 – Smuggling

Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both.

## Title 18, United States Code Section 1956 - Money Laundering

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

* * *

(B) knowing that the transaction is designed in whole or in part –

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

* * *

shall be sentenced to . . . imprisonment for not more than twenty years, . . .  For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds or specified unlawful activity, and all of which are part of a single plan or arrangement.

* * *

(a) (2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

(A) with the intent to promote the carrying on of specified unlawful activity.

\* \* \*

(c) As used in this section--

\* \* \*

(7) the term "specified unlawful activity" means --

(A) any act or activity constituting an offense listed in section 1961(1) of this title . . .

 \* \* \*

(h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

\* \* \*

# EXHIBIT D

