UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 18-CR-00308 (PJS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S POSITION |
| v. | ) | WITH RESPECT TO SENTENCING |
| | ) | |
| SEYED SAJJAD SHAHIDIAN | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys Erica H. MacDonald, United States Attorney for the District of Minnesota, Assistant United States Attorneys Timothy C. Rank and Charles J. Kovats, Jr., hereby submits its position with respect to the sentencing of defendant Seyed Shahidian (hereafter "Mr. Shahidian" or "the defendant").

## I.     THE CASE AGAINST THE DEFENDANT

### A.     The Charge of Conviction

On June 16, 2020, the defendant pleaded guilty to Count 1 of the Indictment, which charged him with Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. This offense carries a statutory maximum sentence of five years' imprisonment, a three-year term of supervised release, a $250,000 fine, and a $100 special assessment.

**B.      The Defendant's Offense and Relevant Conduct**

*1.      The Factual Basis in the Plea Agreement*

As agreed to by the parties in the plea agreement:

<u>Background on Payment24 and the Defendant</u>

Payment24 was an internet-based financial services company located in Iran.   The primary business of Payment24 was to assist Iranian citizens with conducting financial transactions with businesses in the United States in violation of both international sanctions and United States law.   Specifically, Payment24 sold to its Iran-based customers a package of services that, as advertised, allowed its customers to circumvent prohibitions based on international sanctions on financial transactions with U.S.-based businesses and other international businesses.   This package of services included unlawful access to U.S. financial and commercial markets using United States-based payment processing companies like PayPal and Payoneer.   Until shortly after his arrest on November 11, 2018, in the United Kingdom, Mr. Shahidian served as the Chief Executive Officer of Payment24.   One of Shahidian's co-conspirators, Vahid Vali, served as the Chief Operating Officer for Payment24.

<u>The Object of the Conspiracy</u>

Beginning in 2009 and continuing until his arrest, the defendant and his co-conspirators engaged in a scheme to defraud the United States and United States-based businesses and to violate and cause violations of United States sanctions lawfully imposed on Iran.   In order to accomplish the criminal objective of this conspiracy, Shahidian,

through his company Payment24, obtained payment-processing accounts from companies like PayPal and Payoneer using fraudulent passports and other false residency documentation to represent that his customers resided outside of Iran when they did not. During the course of the conspiracy, Shahidian, without a license, opened, or caused to be opened, hundreds of PayPal accounts on behalf of his Payment24 customers who resided in Iran. Using these accounts, Shahidian and his customers conducted business in the United States and thereby violated and caused violations of U.S. sanctions.

When conducting business with United States-based businesses, Shahidian also conspired with others to deceive United States-based businesses into exporting United States-origin goods to Iran without a license by making material misrepresentations regarding the destination of the goods. For example, Shahidian, and others, falsely represented to the United States-based businesses that the purchased goods were destined for the United Arab Emirates ("UAE"), when in fact they were destined for Iran.

Shahidian also opened accounts on his own behalf with United States-based payment processing companies, including PayPal and Payoneer, by providing false information to these companies asserting that he resided in the UAE when, in fact, he resided in Iran. On more than twenty separate occasions, Shahidian used his PayPal accounts to send payments to an e-commerce company headquartered in Minnetonka, Minnesota, to unlawfully purchase digital downloads of computer software and software licenses, and other computer related products, all of which were destined for use in Iran.

<u>Relevant Actions of the Defendant</u>

*False Representations to U.S. Payment Processing Companies*

Shahidian and Vali obtained access for their Payment24 customers by fraud, specifically, by providing the payment-processing companies referenced above with fraudulent identification and residency documents that made it appear to the payment processing companies that Payment24's customers reside in the UAE and not in Iran.   For example, Payment24 charged customers a fee for an advertised package that included a PayPal account, an "ID card and address receipt," one remote IP address within the UAE, and a Visa gift card for PayPal verification purposes.   Payment24's website also counseled its customers "as long as the American sanctions continue to be in place, it is always advisable to create your accounts with a foreign identity."   These PayPal accounts processed millions of dollars of U.S. currency transactions on behalf of Payment24's Iranian customers, in violation of U.S. sanctions.

As another example, in January 2015, Shahidian provided to Payoneer fraudulent documents that falsely stated he lived in the UAE.   A court-authorized search of an email account used by Shahidian revealed that on January 9, 2015, Shahidian sent an email to Vali requesting a "passport edit" and the instruction "Do you see the upper portion of [first name]'s passport?  I want you to replace it with the portion used in [second name]'s passport, meaning where the [second name] residency in the UAE is entered."   A scanned image of an Iranian passport belonging to [second name] was included in this email along with a scan of [first name]'s UAE passport. Two files were attached to the e-mail, entitled

4

"Hesam.jpg" and "Mehdi-pass.jpeg."   "Hesam.jpg" was a scanned passport from the Islamic Republic of Iran for S.S., Passport No: XXXXX3309, with a "Domicile" listed as Iran and the "Place of Issue" listed as The Passport-Police of Iran.   The file "mehdi-pass.jpeg" appeared to be a scanned passport from the Islamic Republic of Iran for an individual named M.B., Passport No: XXXXX2425, with the "Country of Residence" listed as the "United Arab Emirates" and the "Place of Issue" listed as "Abu Dhabi."

On January 9, 2015, Shahidian received at his XXXXXX@yahoo.com account an email bearing the subject "Re: Passport edit."   The body of the e-mail did not contain any text.   There was one attachment to the e-mail named "SCAN.jpg."   The attached file appeared to be the same scanned passport for S.S., Passport No: XXXXX3309.   However, the top portion of the passport listed "Country of Residence: United Arab Emirates" and "Place of Issue" as "Abu Dhabi."

*Unlawfully Obtaining United States-based Goods*

Shahidian was also a customer of Payment24.   He provided various United States-based businesses with false documents of his residency and citizenship in an effort to conceal that he was attempting to procure illegally United States-origin computer goods for end-use in Iran.   Using fraudulently obtained PayPal accounts, Shahidian engaged in, and conspired to engage in, the smuggling of goods from the United States into Iran and the willful violation of the International Emergency Economic Powers Act and the Iranian Transactions and Sanctions Regulations.

Emails and other records show that Shahidian committed these violations by directing the U.S.-based businesses to ship the goods to an address in the UAE.   Shahidian later marketed these same goods for sale in Iran using a catalog entitled "Network and Server Equipment."   Specifically, an email received by Shahidian on July 12, 2016, contained a digital version of this catalog that bears the logo of another Shahidian-controlled business entity named "Star Soheil Company."   The catalog states that the "Star Soheil Company" has nine months of experience in importing servers and network equipment for companies, organizations, and datacenters in Iran, and has imported a number of Dell servers from the United States that it was offering for sale in Iran.   The description of the Dell servers ("Dell Poweredge C1100") in the catalog are the same Dell servers that Shahidian purchased from a United States company based in Fremont, California.   Records obtained from that Fremont, California-based company show that on or about June 9, 2016, "Soheil Shahidi" made purchases of these Dell computer servers and other equipment totaling approximately $89,981.64 USD.   The invoices were paid using PayPal accounts Mr. Shahidian opened by fraud.   The records also show the servers were shipped to the UAE but transshipped to Iran for Shahidian's use.

*The Defendant's Criminal Use of Payment24 in Minnesota*

Finally, Shahidian advertised on the Payment24 website that he, through Payment24, has successfully introduced millions of U.S. dollars into the economy of Iran. Financial records from PayPal demonstrate that one of the PayPal accounts used by Shahidian received more than $6,000,000.   A second PayPal account used by Shahidian

received more than $1,800,000 in U.S. currency. This second account was used by Shahidian to purchase computer equipment unlawfully through Digital River, a Minnesota-based payment processing company. In total, Shahidian made 21 purchases through Digital River – using different PayPal accounts – between June 16, 2014, and January 23, 2018.

### 2.    *The Pertinent Guideline Calculations Agreed to by the Parties*

In the plea agreement, the parties agreed to the following guideline calculations:

| | |
|---|---|
| Base Offense Level, § 2M5.1(a)(1): | 26 |
| Role in the Offense, § 3B1.1(a): | +4 |
| Acceptance of Responsibility, § 3E1.1(a): | -3 |
| Total Offense Level: | 27 |

The parties also agreed that the defendant's criminal history category would likely be I. Accordingly, the parties concluded that the defendant's sentencing guidelines range would otherwise be 70-87 months' imprisonment if it were not capped at 60 months' by the statutory maximum.

## II.    THE PSR's CALCULATIONS AND RECOMMENDATIONS.

On August 20, 2020, the United States Probation Office disclosed the PSR in this case. The PSR's guideline calculations mirror those agreed to by the parties. (PSR ¶ 32). The government has no objections to the PSR and agrees with the factual summary contained therein. The government does not anticipate a need for an evidentiary hearing at sentencing.

## III.   THE GOVERNMENT'S ANALYSIS UNDER 18 U.S.C. § 3553(a).

### A.   Nature and Circumstances of the Offense.

The Executive Branch has determined, as a matter of foreign policy and national security, that the threat posed by the government of Iran is so severe that only sanctions and a trade embargo on certain United States-origin goods, technology, and services are adequate to protect the interests of the United States.

The defendant's knowing and enduring role in providing access – through fraud – to United States financial systems and markets undermined both the sanctions against Iran and the Executive Branch's repeated declarations that the actions of the government of Iran are a threat to national security.

The application notes to U.S.S.G. § 2M5.1 outline relevant factors courts should consider when evaluating the nature and circumstances of a sanctions violation.   Those circumstances are: (1) the degree to which the violation threatened a security interest of the United States; (2) the volume of commerce involved; (3) the extent of planning or sophistication; and (4) whether there were multiple occurrences involved.   Though none of these factors are present in an "extreme form" in this case, each factor is present; thus, the serious nature of the offense supports the imposition of a significant sentence.

As to the first factor, the defendant's criminal conduct is serious and implicates the security of the United States.   Strengthening the economy of a country that supports international terrorism is exactly what the embargo was designed to avoid.  *See United States v. Homa Int'l Trading*, 387 F.3d 144, 146 (2d Cir. 2004) ("The "obvious purpose"

8

of the President's Executive Order prohibiting certain transactions with Iran "is to isolate Iran from trade with the United States"). Here, the defendant's unlawful activities intended to thwart the sanctions regime on an exceedingly broad scale. The defendant provided his customers the ability to conduct prohibited financial transactions and engage in other commerce with U.S. companies.

As to the second and fourth factors, the volume of commerce involved in the offense was substantial and occurred repeatedly. The defendant operated Payment24 for nearly a decade and facilitated transactions for hundreds of customers involving millions of dollars. He himself used his own business and purchased computer equipment from the United States that he caused to be unlawfully transshipped via a third country to Iran.

As to the third factor, the defendant's offense was exceedingly sophisticated and utilized the efforts of the dozens of individuals employed by Payment24. Although ostensibly a legitimate business in Iran, Payment24 relied upon document fraud, identity theft, and similar tactics to facilitate the services provided to its customers.

## B.    History and Characteristics of Defendant.

The defendant is a 33 year-old Iranian citizen. (PSR ¶ 41). He grew up in Iran with the benefit of a supportive family and a quality education. (PSR ¶¶ 42-43). He married his spouse approximately three years ago. (PSR ¶ 46). By all accounts, he was successful in business – notwithstanding the fact that his business violated U.S. law, of course. Other than the present offense, Mr. Shahidian has no known criminal history. (PSR ¶ 34). The defendant's intelligence, education, apparently stable and supportive

family, and remorse for his crimes, suggests that he has above average prospects for success upon his release from custody.

### C. The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct, and the Need for the Sentence Imposed to Protect the Public.

In this case, there is a need for both individualized and general deterrence. Individualized deterrence is that which discourages a defendant from ever committing such a crime again. General deterrence is the public response necessary to deter other people from committing similar crimes. "Congress specifically made general deterrence an appropriate consideration . . . and we have described it as 'one of the key purposes of sentencing.'" *Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)).

The seriousness of the defendant's crime warrants a sentence that would deter others from undermining U.S. foreign policy and national security interests by flouting export restrictions and sanctions regimes such as those imposed against Iran. The government is aware that sanction-evading conduct is widespread in Iran. Indeed, several competitors of the defendant's company have filled the breach created by Payment24's closing. The government is also aware that Mr. Shahidian's arrest, extradition, and conviction have been reported widely in the Iranian media. These events could have a deterrent effect in Iran and certainly the sentence imposed by the court here could amplify this effect.

Sentences in "white-collar"-type cases – as this one is – can have a substantial deterrent effect, arguably more so than in any other area of criminal law. *See United States*

*v. Bergman*, 416 F. Supp. 496, 500 (S.D.N.Y. 1976) (crimes that are "deliberate, purposeful, continuing, non-impulsive, and committed for profit are among those most likely to be generally deterrable by sanctions most shunned by those exposed to temptation."); see generally, Richard Frase, Punishment Purposes, 58 Stanford L. Rev. 67, 80 (2005); Elizabeth Szockyj, Imprisoning White Collar Criminals?, 23 S. Ill. U. L. J. 485, 492 (1998).

Through its just punishment of the defendant in this case, the Court can send an appropriate message that export violations are – as Congress and the President designed them to be – significant matters that warrant real punishment.   In light of the defendant's actions, a serious sentence would serve to communicate the importance with which the United States views its own national security.

## IV.   CONCLUSION

The government believes that a sentence at or near the guidelines range is appropriate and necessary to satisfy the factors described in 18 U.S.C. § 3553(a).

Dated: September 25, 2020                Respectfully Submitted,

                                         ERICA H. MACDONALD
                                         United States Attorney

                                         /s/ Charles J. Kovats
                                         _____
                                         TIMOTHY C. RANK
                                         CHARLES J. KOVATS, JR.
                                         Assistant United States Attorneys

11