UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 18-308 (PJS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v.              Plaintiff, | ) | **DEFENDANT'S POSITION WITH** |
| | ) | **RESPECT TO SENTENCING** |
| SEYED SAJJAD SHAHIDIAN, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Seyed "Soheil" Sajjad Shahidian knew that his company evaded U.S. export laws with Iran. Much of Iran is aware of the U.S. sanctions but the citizens rely on companies like Mr. Shahidian's to overcome trade restrictions so they can enjoy goods from overseas. Mr. Shahidian like entrepreneurs before and after him, wanted to give himself and Iranian citizens a way around the sanctions. He knew his actions were illegal but did not recognize the consequences. In fact, he was on an Iranian news program promoting his company, Payment24, and did not deny that his company evaded the sanctions. As many before him, he thought as long as he did not interfere with oil, the military or religion, he would not be punished for his actions. But, he has been punished. While on his honeymoon in London, Mr. Shahidian was arrested on a Federal Criminal Complaint on November 11, 2018. He was detained, and later voluntary agreed to come to the United States to

face prosecution. Soon thereafter, he entered a plea guilty to Conspiracy to Defraud and Commit Offenses Against the United States.

There are no objections to the PSR's finding that the advisory guideline range is the statutory maximum penalty of 60-months. But, as has been the case for well over a decade now, that range is just that—a guideline for sentencing courts to reference in crafting an appropriate sentence. *United States v. Booker*, 543 U.S. 220, 259-60 (2005).

Since Booker, the Supreme Court has underscored the limited role the guidelines ought to play in sentencing a defendant. They carry no presumption of reasonableness for a sentencing court. *Nelson v. United States*, 555 U.S. 350, 351 (2009) (per curiam). Sentencing courts may vary from the guidelines based on considerations as provocative as simply disagreeing with the guidelines' treatment of an offense. *See, e.g., Kimbrough v. United States*, 552 U.S. 85, 110-11 (2007). And variances from the guidelines do not need to be accompanied by "extraordinary" circumstances. *Gall v. United States*, 552 U.S. 38, 47 (2007). The ultimate sentencing touchstone is not the guidelines, but rather 18 U.S.C. § 3553(a), which directs a court to impose a sentence "not greater than necessary" to honor the factors enumerated in that section. *See, e.g., United States v. Huff*, 514 F.3d 818, 820 (8th Cir. 2008) ("[A] district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater

than necessary, to comply with the purposes' of section 3553(a)(2)." (citation omitted)). This is an inherently individualized and restrictive inquiry, since the primary enumerated goal of § 3553(a) is sentencing restraint. *Gall*, 552 U.S. 49-50. Cast in that light, it is clear that for Mr. Shahidian a sentence within his guidelines range would be greater than necessary to accomplish the sentencing goals set forth in § 3553(a). Respectfully, Mr. Shahidian is asking the Court to vary from his advisory Guidelines range of 60 months and to sentence him to time served (21-months).

## DISCUSSION

### A.    Background

#### 1.   Family

Mr. Shahidian was born and raised in Iran. He and his older sister were raised by both parents. The family has always been very close to each other and continue to support each other. Growing up, Mr. Shahidian and his sister were well provided for. Their father worked and their mother took care of the home. Education was extremely important to the family and their father made sure both of his children received an education. Mr. Shahidian's sister earned her bachelor's degree in Industrial Engineering in 2007 and later her master's degree. Mr. Shahidian pursued an education in computers. After high school, he attended college with a focus in computers and the internet. He dreamed of moving out of

Iran where he could freely and legally succeed in his own entrepreneurship. In furthering this dream, he decided to move to England or the Untied States, but knew he had to improve his English. He attended a English speaking course in Malaysia. His family informed counsel that Mr. Shahidian was so homesick, he did not finish his education in Malaysia and instead returned to Iran.



Mr. Shahidian met his wife, Deri, in 2017 after their mothers suggested the two meet. Deri has completed her MBA in Dubai and works in the pharmaceutical field. However, she is currently unemployed. The couple wed on April 1, 2018. Prior to his arrest, they lived together in Tehran. Deri remains extremely supportive of her husband.

Mr. Shahidian looked at Steve Jobs and Mark Zuckerberg success stories. Like those guys, he wanted to better the lives of those around him using his technical skills and generosity. He studied hard at this goal and came up with many ideas over the years that proved financial rewarding and gave people various useful services.

In 2017, he obtained a passport for Dominica. The purpose was so he and his wife could obtain international visas more readily than they could with their Iranian passports. The following January, soon after their engagement, the

Shahidians traveled to the UK. While on this trip, they decided they wanted to move to the UK. The following November, they met with professionals to discuss obtaining an entrepreneur visa. Unfortunately, Mr. Shahidian never made it to the immigration appointment because he was arrested on this case.



## 2. Education

As stated earlier, education was extremely important to the Shahidian family. Mr. Shahidian graduated from high school and then university (2001).

Throughout his working years, he attended continuing education classes to better himself.





### 3. Giving back to his community

The more successful Mr. Shahidian became, the more he gave back to his community – financially and with his time. He gave talks, mentored, and donated

to causes that he believed in. Mr. Shahidian provided guidance for young people. He helped people find jobs if he could not hire them himself.





He was a mentor to university students and was recognized for his time with the students. He had a podium in his home where he practiced his talks to make sure the audience was getting the best possible experience. His talks were not about avoiding sanctions, but rather how to start a start-up or owning your own business or "Be Your Own Entrepreneur."

7

He participated in seminars.



The Imam Khomeini Relief Foundation is an Iranian charitable foundation founded in 1979. The charity gives back to families in need of financial support. Mr. Shahidian consistently donated money to the organization throughout his success with Payment24. Counsel received letters from the foundation from as early as 2014, praising Mr. Shahidian's generosity.

In the Name of God

Official Translation from Farsi
The Emblem of Handicapped Care Complex, Larestan, Iran (charity)
Handicapped Care Complex, Larestan, Iran (charity)

Date: Jul. 14th, 2016

Dear MR. SHAHIDIAN,
Please be informed that the amount of Rls. 150,000,000 was received. God bless you.

*Fajr Handicapped Care Complex, Larestan, Iran (Signed & Sealed)*

Opposite Martyrs Foundation, Shahid Bagherpourian Crossroads, Old City, Lar, Iran
Tel.: +98-3332020, +98-3346323
*CERTIFIED TO BE A TRUE TRANSLATION OF THE ORIGINAL FARSI TEXT*
*MOHAMMAD SOLTANI, OFFICIAL ENGLISH TRANSLATOR TO IRANIAN JUDICIARY*
*C 15422*

In the Name of God

Official Translation from Farsi
The Emblem of Handicapped Care Complex, Larestan, Iran (charity)
Handicapped Care Complex, Larestan, Iran (charity)

Date: Dec. 28th, 2014

Dear MR. SHAHIDIAN,
Please be informed that a check for the amount of Rls. 100,000,000 was received. God bless you.

*Fajr Handicapped Care Complex, Larestan, Iran (Signed & Sealed)*

Opposite Martyrs Foundation, Shahid Bagherpourian Crossroads, Old City, Lar, Iran
Tel.: +98-3332020, +98-3346323
*CERTIFIED TO BE A TRUE TRANSLATION OF THE ORIGINAL FARSI TEXT*
*MOHAMMAD SOLTANI, OFFICIAL ENGLISH TRANSLATOR TO IRANIAN JUDICIARY*
*C 15422*

**IN THE NAME OF GOD**
**OFFICIAL TRANSLATION FROM FARSI**

*O God! What kind of spring is kindness,*
*out of which I drank one drop only, but cried as much as a sea?*

The value of deeds can be measured according to their individual and social significance and impact. Based on religious instructions, whoever lays the foundation for some act of goodness, they shall be rewarded for it so long as the effects of their deed are there.

Dear **MR. SEYEDSAJJAD SHAHIDIAN (Eng'r.)**, the Respected Benefactor:

Apart from the element of the doer's free will and choice, another factor that distinguishes the human value and moral image of generosity and all other godly and benevolent acts from similar deeds is the purpose and intention for conducting such religious and moral orders; and you have truly fulfilled your duty in this regard through your good deeds carried out in support of the needy. Hence, we felt obliged to offer you a humble sign of our appreciation in gratitude for the generosity of yours, and wish you ever-increasing achievements from the bountiful God.

*Best regards,*
*Mohammadhassan Shafiei,*
*President of Imam Khomeini Relief Foundation – District 4 of Shiraz, Iran*
*(Signed & Embossed seal)*

*November 2016*

\*CERTIFIED TO BE A TRUE TRANSLATION OF THE ORIGINAL FARSI TEXT\*
\*MOHAMMAD SOLTANI, OFFICIAL ENGLISH TRANSLATOR TO IRANIAN JUDICIARY\*
\*S/F 15427\*

## 4.  Employment History

Mr. Shahidian has consistently worked as an adult. He has ran his own start-ups and obviously as related to this case, he ran his own company with employees. He wishes to someday run his own company again; he only hopes he has the opportunity to do so.

### 5.  Mental Health

Paragraphs 52-53 of the PSR address Mr. Shahidian's mental health. It has been difficult being away from his family and his wife. He had to adjust to living in prison while in London, jail at Sherburne and now the halfway house. This has been his first time to the United States and it has been an adjustment.

### 6.  Lack of Criminal History

Mr. Shahidian has no prior criminal history. This arrest has been devastating on him and his family, as they have never experienced the criminal justice system.

### 7.  No History of Drug Use of Alcohol Use

Mr. Shahidian has no history of drug use. He has socially drank wine.

### B.    Offense Conduct

The offense conduct is described in detailed in the PSR and the plea agreement. Mr. Shahidian founded Payment24. He had employees and a Chief Operating Officer. The company sold "packages" that included services to assist financial transactions and international orders. Paypal accounts were setup to show the individual lived in UAE rather than in Iran; thus going around sanctions. Mr. Shahidian's illegal activity began in 2009. The company made lots of money and included many employees. Once arrested, Mr. Shahidian shut down the company. Not surprisingly, as soon as Payment24 shutdown, other companies started the same "business" in Iran.

C.      **Fines**

The Court may impose a fine from $25,000 to $250, 000. Mr. Shahidian has assets overseas but does not have access to those assets. He currently is not employed. He has further been notified that the Iranian government is attempting to obtain his real property in Iran. Given his current financial circumstances, he requests no fine be imposed.

D.      **Pretrial Custody**

Mr. Shahidian was arrested in London, England on November 11, 2018. While in London, he was housed at HM Wandsworth Prison; one England's largest prisons.   On May 15, 2020, he was extradited to the United States and housed at the Sherburne County Jail during the COVID pandemic. He had no visitors other than his attorney via Zoom. On August 18, 2020 he was released to a halfway house where he has been on lockdown other than to see his attorney. The entire time he was in custody, he had one violation. Since being at the halfway house, has had zero violations.

E.      **Collateral Consequences**

Mr. Shahidian will face harsher conditions than similarly situated U.S. Citizens or legal residents. His legal status will prevent him from serving his sentence at a prison camp, although he would be otherwise eligible. Because he may have an ICE detainer placed back on him during his prison sentence, he will

be ineligible for a camp. And he will not be able to spend the last months of his
sentence in a halfway house. As a result, he will serve his sentence under
conditions that are substantially harsher than what he would face if he were a US
citizen or resident.

The collateral consequences of a conviction, nowhere considered by the
guidelines, are themselves a proper basis for a downward variance. See, e.g.,
*United States v. Anderson*, 533 F.3d 623, 633 (8th Cir. 2008) (affirming variance based
in part on fact that "defendant had suffered atypical punishment such as the loss
of his reputation and his company"); *United States v. Pauley*, 511 F.3d 468, 474 (4th
Cir. 2007) (lower sentence warranted because defendant lost his teaching
certificate and state pension, facts relevant to need for just punishment under
§3553(a)(2)(A) and adequate deterrence, § 3553(a)(2)(B)). As several courts have
recognized, collateral consequences of conviction are relevant to the need for the
sentence imposed to reflect just punishment and to deter future misconduct. See,
e.g., *United States v. RV*, 157 F. Supp. 3d 207, 257 (E.D.N.Y. 2016) (noting "exacting
collateral consequences which serve to deter future criminal conduct"); *United
States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (affirming downward variance
based in part on "lasting effects of being required to register as a sex offender");
*United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (consideration of
collateral consequences consistent with 3553(a) directive that sentence reflect

12

"need for just punishment," § 3553(a)(2)(A), and "adequate deterrence," § 3553(a)(2)(B)); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008).

Now, Mr. Shahidian understands he is completely responsible for all of the negative consequences that have befallen him. Still, this Court should consider the full range of consequences she has already suffered in determining an appropriate punishment.

**F.    The Need to Deter Criminal Conduct, Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

A below-guidelines sentence of time served will honor the sentencing goals of deterrence, just punishment, or respect for the law. A May, 2016 document published by the National Institute of Justice[1] (a division of the Department of Justice), entitled "Five Things About Deterrence," explained that "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime. The article stated that "prison sentences, particularly long sentences, are unlikely to deter future crime," and "actually may have the opposite effect." Likewise, the report continues, "[i]ncreasing the severity of punishment does little to deter crime . . . partly because criminals know little about the sanctions for specific crime." This is especially true given the unique facts of this case, which involves an Iranian citizen who was never before in the United States. The notion that Mr. Shahidian

---

[1] *Available at* https://www.ncjrs.gov/pdffiles1/nij/247350.pdf.

13

must receive a guidelines sentence to deter international society from committing Conspiracy offenses is simply unsupported.

With respect to just punishment, Mr. Shahidian's time in pretrial detention has been long, arduous, and taxing. Lengthy pretrial detention in local custody and international custody is challenging, because jails lacks the full facilities and programming of federal prisons. Further time in custody is not necessary to establish a punishment that is just. Justice is honored by a sentence that recognizes the custodial sentence Mr. Shahidian has already served.

## G.     A Time-Served Sentence Will Not Create Unwarranted Sentencing Disparities.

This district has seen similar cases as Mr. Shahidian's case. For example, in *United States v. Green Wave Telecommunication*, 15-329 (JNE/KMM), Defendant Ghodskani was sentenced to credit time served after admitting to her role in conspiracy to illegal export technology from the United States to Iran. Ghodskani had an advisory guideline range was 46-57 months, was sentenced to time served within 2 months of arriving in the United States from Australia. (27-months). Defendant Jalali admitted to the same facts and the parties agreed to a mitigating role. The court found an advisory range of 37-46 months and sentenced Jalali to 15 months. Around the country, there have been similar cases. Attached to this pleading is a summary of *some* of those cases. *See* Exhibit 1. Mr. Shahidian

recognizes that every case before the courts may have different factors animating their respective sentences, but it is important to recognize those sentences for defendants with the same conviction as Mr. Shahidian. He has been in custody for 21 long months. A sentence of credit time served is justified and warranted, and is not disparate from similarly-situated defendants.

## CONCLUSION

For the reasons set forth above, Seyed Sajjad Shahidian asks this Court to sentence him to time served.


Dated:   September 23, 2020                Respectfully submitted,


                                           _s/ Manny K. Atwal_
                                           MANNY K. ATWAL
                                           Attorney ID No. 282029
                                           Attorney for Shahidian
                                           107 U.S. Courthouse
                                           300 South Fourth Street
                                           Minneapolis, MN 55415